**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN**

JANE DOE and JANE ROE,

Plaintiffs,

v.

PRAIRIE DU CHIEN MEMORIAL HOSPITAL ASSOCIATION, INC. D/B/A CROSSING RIVERS HEALTH,

Defendant.

Case No. 24-cv-67-wmc

**BRIEF IN SUPPORT OF CROSSING RIVERS' MOTION TO DISMISS THE COMPLAINT**

Dated: March 11, 2024

*/s/ Nathan J. Oesch*
Matthew J. Splitek (WI Bar No. 1045592)
QUARLES & BRADY, LLP
33 E Main St., Suite 900
Madison, WI 53703
(608) 251-5000
matthew.splitek@quarles.com

Kristin Foster (WI Bar No. 1131939)
Nathan J. Oesch (WI Bar No. 1101380)
QUARLES & BRADY, LLP
411 East Wisconsin Avenue
Suite 2400
Milwaukee, WI 53202
(414) 277-5000
kristin.foster@quarles.com
nathan.oesch@quarles.com

*Attorneys for Prairie du Chien Memorial Hospital Association, Inc. d/b/a Crossing Rivers Health*

# TABLE OF CONTENTS


INTRODUCTION ........ 1

BACKGROUND ........ 1

- A. Plaintiff Doe's Allegations ........ 2
- B. Plaintiff Roe's Allegations ........ 3
- C. Class Claims ........ 4

ARGUMENT ........ 5

- I. Plaintiffs Fail to State a Claim for Negligence (Count I). ........ 5
- II. Plaintiffs Fail to State a Claim for Negligence Per Se (Count II). ........ 7
- III. Plaintiffs Fail to State a Claim for Invasion of Privacy (Count III). ........ 8
  - A. Intrusion Upon Seclusion ........ 9
  - B. Publication of Private Facts ........ 10
- IV. Plaintiffs Fail to State a Claim for Breach of Implied Contract (Count IV). ........ 11
- V. Plaintiffs Fail to State a Claim for Unjust Enrichment (Count V). ........ 13
- VI. Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty (Count VI). ........ 13
- VII. Plaintiffs Fail to State a Claim for Misrepresentation (Count VII). ........ 14
- VIII. Plaintiffs Fail to State a Claim for Conversion (Count VIII). ........ 15
- IX. Plaintiffs Fail to State a Claim for Violation of Wisconsin Deceptive Trade Practices Act, Wis. Stat. Ann. § 100.18 (Count IX). ........ 16
- X. Plaintiffs Fail to State a Claim for Interception and Disclosure of Wire, Electronic, or Oral Communications, Wis. Stat. Ann. § 968.31 (Count X). ........ 17
- XI. Plaintiffs Fail to State a Claim for Violation of Confidentiality of Patient Health Care Records Law, Wis. Stat. Ann. § 146.82 (Count XI). ........ 18

CONCLUSION ........ 18

## INTRODUCTION

Plaintiffs' scattershot complaint attempts to plead eleven causes of action based on a small hospital's use of an entirely commonplace webpage technology. At most, the complaint alleges that Crossing Rivers, a non-profit corporation that operates a 25-bed critical access hospital in Prairie du Chien, at one point installed widely-used "tracking pixels" on its *public-facing* webpage. Plaintiffs do not allege that Crossing Rivers used such pixels inside its authenticated patient portal, where patients may log in and obtain and provide their personal health information. Plaintiff allege only that Crossing Rivers had a tracking pixel on its public Provider Directory, https://www.crossingrivers.org/providers/, which patients and non-patients alike may use to search for and read about Crossing River's doctors, nurses, and other providers. Nothing in the complaint pleads the Crossing Rivers gathered, let alone disclosed, Plaintiffs' personal health information when they allegedly searched for health care providers on that public webpage. Their complaint must be dismissed with prejudice under Rule 12(b)(6).

## BACKGROUND

Crossing Rivers operates a "25-bed Critical Access Hospital" and "adjoined primary care clinic" in Prairie du Chien, Wisconsin. (Compl. ¶¶ 5, 35; About Us, Crossing Rivers, https://www.crossingrivers.org/about-us/ (last visited Feb. 23, 2023). It provides patients in Southwest Wisconsin and Northeast Iowa with access to more than 100 services. (About Us, Crossing Rivers, https://www.crossingrivers.org/about-us/ (last visited Feb. 23, 2023).) According to Plaintiffs, at some unspecified point in time, Crossing Rivers "knowingly configured and implemented into its website code-based tracking devices" for marketing purposes. (*Id*. ¶¶ 6, 37.)

**A. Plaintiff Doe's Allegations**

Plaintiff Jane Doe alleges that she has been a patient of Crossing Rivers since 2004. (*Id.* ¶ 87.) She claims that she began using Crossing Rivers' website in 2012 or 2013, at Crossing Rivers' "direction and encouragement," although she does not specify what the so-called "direction and encouragement" entailed. (*Id.* ¶¶ 88-89.)

Although Plaintiff Doe claims that she "relied on [Crossing Rivers'] Website and Online Platforms to communicate confidential patient information," she does not allege that she directly communicated with a physician or other healthcare provider through the website. Nor does she allege undertook any activities within the authenticated portion of Crossing Rivers' website, i.e., the patient portal. Rather, Doe alleges that she used the website to search for doctors using the "Provider Directory" feature. (*Id.* ¶ 88.) She surmises that because she used Crossing Rivers' website in this fashion, her identity, status as a patient, seeking of medical treatment, health conditions, and location were all transmitted to Facebook. (*Id.* ¶ 91.)

She claims that she "reasonably expected that her online communications with [Crossing Rivers] were confidential" and would not be transmitted to, or intercepted by, a third party. (*Id.* ¶ 89.) She purportedly "trusted that [Crossing River] would safeguard her Private Information, [due] to its privacy policies and the law." (*Id.* ¶ 90.) Plaintiff Doe does not articulate which provisions of Crossing Rivers' privacy policy or "the law" she relied on, if any (*see* ¶¶ 87-96), but elsewhere in the Complaint, Plaintiffs quote various provisions of Crossing Rivers' privacy policy concerning Crossing Rivers' treatment of protected health information and data breaches (*see, e.g.*, ¶¶ 67-72), and assert that Crossing Rivers' conduct violates HIPAA, the FTC Act, and industry standards (*see, e.g.*, ¶¶ 115-23 (HIPAA), 124-29 (FTC), 130-34 (industry standards)).

Since using the website, Plaintiff Doe has allegedly received targeted online advertisements for prescription medications (including Eliquis and Plavix), cardiology, toe fungus, and doctors. (*Id.* ¶ 93.) In Plaintiff Doe's view, Crossing Rivers' actions caused her to suffer unspecified monetary damages, loss of privacy, unauthorized disclosure of her private information, unauthorized access to her private information by third parties, use of her private information for advertising purposes, embarrassment, humiliation, frustration, emotional distress, decreased value of her Private Information, lost benefit of her bargain (she alleges that as part of the provision of medical services, she paid for privacy protections that she did not receive), and increased risk of future harm resulting from further unauthorized use and disclosure of her information. (*Id.* ¶¶ 94, 96.)

**B. Plaintiff Roe's Allegations**

Plaintiff Jane Roe's allegations are similar. She alleges that she has been a patient of Crossing Rivers for the past five or six years and began using Crossing Rivers' website in 2022, at Crossing Rivers' "direction and encouragement," without specifying what "direction and encouragement" entailed. (*Id.* ¶¶ 97-8.) Like Plaintiff Doe, Plaintiff Roe alleges that she has used the website "to communicate confidential patient confirmation," but she does not allege that she used it to communicate with a physician or other healthcare provider directly. (*Id.* ¶ 98.) Similar to Doe, Roe also does not allege she undertook any activities within the authenticated portion of Crossing Rivers' website. Rather, she alleges that she used it to search for doctors using the "Provider Directory" and website's general search bar by searching for the word "OBGYN." (*Id.*)

Plaintiff Roe surmises that because she used Crossing Rivers' website in this fashion, her identity, status as a patient, seeking of medical treatment, health conditions, and location were all transmitted to Facebook. (*Id.* ¶ 101.) Like Plaintiff Doe, Plaintiff Roe claims that she "reasonably

expected that her online communications with [Crossing Rivers] were confidential" and would not be transmitted to, or intercepted by, a third party. (*Id.* ¶ 99.) She purportedly "trusted that [Crossing River] would safeguard her Private Information, [due] to its privacy policies and the law." (*Id.* ¶ 100.)

Plaintiff Roe does not articulate which provisions of Crossing Rivers' privacy policy or "the law" she relied on, if any (*see* ¶¶ 97-106), but, as noted above, elsewhere in the Complaint, Plaintiffs quote various provisions of Crossing Rivers' privacy policy concerning Crossing Rivers' treatment of protected health information and data breaches (*see, e.g.*, ¶¶ 67-72), and assert that Crossing Rivers' conduct violates HIPAA, the FTC Act, and industry standards (*see, e.g.*, ¶¶ 115-23 (HIPAA), 124-29 (FTC), 130-34 (industry standards)).

Plaintiff Roe believes that she has received targeted online advertisements related to birth control and menopause, as well as ads targeted at women as a result of Crossing Rivers' use of the tracking technologies. (*Id.* ¶ 103.) She asserts that she suffered the same categories of injury as Plaintiff Doe. (*See Id.* ¶ 106.)

### C. Class Claims

Plaintiffs purport to bring claims on behalf of themselves and a class of "[a]ll Wisconsin citizens whose Private Information was disclosed by [Crossing Rivers] to third parties through the Meta Pixel and related technology without authorization." (*Id.* ¶ 158.) Although the complaint is replete with discussion and reference to federal law, all eleven of Plaintiffs' asserted causes of action have been brought under Wisconsin state law: negligence (Count I); negligence *per se* (Count II); invasion of privacy (Count III); breach of implied contract (Count IV); unjust enrichment (Count V); breach of fiduciary duty (Count VI); misrepresentation (Count VII); conversion (Count VIII); violation of the Wisconsin Deceptive Trade Practices Act, Wis. Stat.

§ 1001.18 (Count IX); Interception and Disclosure of Wire, Electronic, or Oral Communications, Wis. Stat. Ann. § 968.31 (Count X); and violation of Confidentiality of Patient Health Care Records Law, Wis. Stat. Ann. § 146.82. (*Id.* ¶ 28.)

## ARGUMENT

### I. Plaintiffs Fail to State a Claim for Negligence (Count I).

Plaintiffs' barebones Complaint lacks the factual heft necessary to state a claim for negligence against Crossing Rivers. "Generally stated, '[t]he test of negligence is whether the conduct foreseeably creates an unreasonable risk to others.'" *Hoida, Inc. v. M & I Midstate Bank*, 2006 WI 69, ¶ 22, 291 Wis. 2d 283, 717 N.W.2d 17 (quoting *Morgan v. Pennsylvania Gen. Ins. Co.,* 87 Wis. 2d 723, 732, 275 N.W.2d 660 (1979)). A claim for negligence consists of the following elements: "(1) the existence of a duty of care on the part of defendant, (2) a breach of that duty of care, (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's injury, and (4) actual loss or damage resulting from the injury." *Gritzner v. Michael R.*, 2000 WI 68, ¶ 19, 235 Wis. 2d 781, 790-91, 611 N.W. 2d 906. Plaintiffs' allegations fail to satisfy the first and third elements.

Regarding the existence of a duty of care, although Plaintiffs assert that Crossing Rivers owes its patients various duties by virtue of the patient-provider relationship, those duties are not implicated by Plaintiffs' use of a public website. There is no expectation of privacy in one's searches on the internet. *See Doe I v. Sutter Health*, No. 34-2019-00258072-CU-BT-GD, 2020 WL 1331948, at *9 (Cal.Super. Jan. 29, 2020); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017), *aff'd* 745 F. App'x 8 (9th Cir. 2018) (both rejecting allegations that internet metadata allegedly communicated to Facebook through health care provider websites constitutes protected health information under HIPAA or California law). And Plaintiffs have not alleged that

they communicated directly with a physician or other healthcare provider through Crossing Rivers' website, much less that they disclosed confidential health information in that context, that was then disclosed to third parties. The only actions they supposedly undertook on Crossing Rivers' website were searches for doctors, (*see Id*. ¶¶ 88, 98), which any person can do, regardless of their status as a patient.

Plaintiffs also fail to allege facts sufficient to establish a causal connection between Crossing Rivers' breach and Plaintiffs injuries. Plaintiffs both allege that they searched for doctors using the "Provider Directory" on Crossing Rivers' website. (*See Id*. ¶¶ 88, 98.) The "Provider Directory," https://www.crossingrivers.org/providers/, is a public-facing portion of Crossing Rivers website that any member of the public can use to search for providers. The mere act of searching for a person's name or selecting a specialty does not convey whether the person conducting the search is a patient or not, whether they are seeking medical treatment, or whether they have particular health conditions. (*See Id*. ¶¶ 91, 101.) A search for "OBGYN" would not convey that information either. As Plaintiffs' alleged use of the "Provider Directory" does not necessarily result in Crossing Rivers disclosing sensitive health information to Facebook, it is not foreseeable that Plaintiffs' alleged use would cause the harm they have alleged. (*See Id*. ¶¶ 91, 101.)

The U.S. Department of Health and Human Services guidance on the use of technologies like Pixel recognizes the lack of foreseeability that a patient's use of unauthenticated portions of a health care providers' website would result in the disclosure of personal health information ("PHI"). The guidance notes that tracking technologies "on regulated entities' unauthenticated webpages generally do not have access to individuals' PHI." (*Id.* ¶ 119 n.69.) While tracking technologies "*may* have access to PHI in certain circumstances," it is not a certainty. (*Id.*) As a

result, it is not foreseeable that Plaintiffs alleged use of the unauthenticated portions of Crossing Rivers' website would cause the harms that they have alleged. This is because where a patient is not logging in and identifying themselves—as a patient would on the authenticated portion of a provider's website— it is not foreseeable that the patient's use would generate, let alone communicate in an identifiable manner, PHI.

## II. Plaintiffs Fail to State a Claim for Negligence Per Se (Count II).

Plaintiffs' claim for negligence *per se* is also flawed. Plaintiff's negligence per se claim is predicated on the notion that Crossing Rivers violated a safety statute. (*See* Compl. ¶ 185.) "A safety statute is a legislative enactment designed to protect a specified class of persons from a particular type of harm." *See Leahy by Heft v. Kenosha Mem'l Hosp.*, 118 Wis. 2d 441, 449, 348 N.W.2d 607, 612 (Ct. App. 1984). "For the violation of the statute to constitute negligence per se, it must be demonstrated that the harm inflicted was the type the statute was designed to prevent and that the person injured was in the class sought to be protected." *Id.* Furthermore, "some expression of legislative intent that the statute was meant to become a basis for the imposition of civil liability must appear." *Id.*

Here, Plaintiffs allege that Crossing Rivers' conduct violated various federal laws, including the FTC Act, HIPAA, the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Par 164, Subparts A and E, and Security Rule, 45 C.F.R. Par 160 and Part 164, Subparts A and C. (Compl. ¶ 185.) But at least one court applying a similar standard in an analogous case has already concluded that neither the FTC Act nor HIPAA regulations are "public safety laws," the violation of which gives rise to a claim for negligence *per se*. *See TRACE WEDDLE, LINDA MATTHIAE & KIM NAUGLE, on behalf of themselves & all others similarly situated v. WakeMed Health & Hospitals d/b/a WakeMed.*, No. 22 CVS 13860, 2023 WL 8369786, at *2 (N.C. Super.

Dec. 4, 2023) ("The negligence *per se* claim is untenable because neither the FTC Act nor the HIPAA regulations are public safety laws. … These are primarily competition and privacy laws, not laws for the protection of life or limb."). So, too, the court should conclude here. Neither the FTC Act nor any of the HIPAA rules or regulations cited in Plaintiffs' Complaint are safety statutes, promulgated to protect Plaintiffs from the harms that they allegedly suffered here. Rather, they are primarily competition and privacy laws. Because none of the laws or regulations that Plaintiffs have identified can be the basis for a claim for negligence *per se*, Plaintiffs' negligence *per se* claim should be dismissed.

Plaintiffs' negligence *per se* claim should be dismissed for the additional reason that Plaintiffs' Complaint does not set forth a plausible chain of events leading to the harms that Plaintiffs purportedly suffered. As noted above, it is implausible that Plaintiffs' simple searches for doctors could have caused them to relay, and enabled Crossing Rivers to convey to third parties, that Plaintiffs were patients, that they were seeking medical treatment, or that they were suffering from certain health conditions.

Because the premise underlying Plaintiffs' negligence *per se* claim is a non-starter and because Plaintiffs have not supplied facts to support this claim, their negligence *per se* claim should be dismissed. *See Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶ 19, 356 Wis. 2d at 665, 676, 849 N.W.2d 693.

### III. Plaintiffs Fail to State a Claim for Invasion of Privacy (Count III).

Plaintiffs have not stated a claim for invasion of privacy either. Plaintiffs advance two theories for liability: (1) intrusion upon seclusion and (2) publication of private facts. (*See* Compl. ¶ 196.) Both fail for the reasons below.

**A. Intrusion Upon Seclusion**

The tort of intrusion upon seclusion concerns the "[i]ntrusion upon the privacy of another of a nature highly offensive to a reasonable person…in a place that a reasonable person would consider private, or in a manner that is actionable for trespass." Wis. Stat. § 995.50(am)(1). To state a claim under this provision, a plaintiff must allege that his or her privacy was invaded in a place that a reasonable person would consider private. Plaintiffs have not, and cannot, state a claim under this provision for several reasons.

First, Plaintiffs' claim stems from their use of Crossing Rivers' website. (*See* Compl. ¶¶ 197-201.) But the Wisconsin Court of Appeals has made clear that "the plain meaning of 'a place' is geographical," *see Hillman v. Columbia Cnty.*, 164 Wis. 2d 376, 392, 474 N.W.2d 913 (Ct. App. 1991)[1], meaning that this tort only extends to intrusions upon privacy occurring in physical spaces. Because Plaintiffs' allegations do not relate to a physical or geographical space, they have not, and cannot state a claim under Wis. Stat. Ann. § 995.50(am)(1).

Second, Plaintiffs have not, and cannot, allege that Crossing Rivers intruded upon their private communications because Plaintiffs initiated communications with Crossing Rivers through Crossing Rivers' website. A defendant is not liable for intrusion upon seclusion when a plaintiff voluntarily provides information to it. *See Linman v. Marten Transp., Ltd.*, No. 22-CV-204-JDP, 2023 WL 2562712, at *6 (W.D. Wis. Mar. 17, 2023) (Plaintiff "provide his personal information to [Defendant] willingly, so [Defendant] didn't intrude on his privacy by collecting it."). It makes no difference that Plaintiffs alleged that they accessed the website at Crossing Rivers' "direction and encouragement" because they do not plead any facts supporting that conclusory statement. *See*

[1] In that opinion, the Court also confirmed that the term "does not include a file of medical records." *Id.* To the extent Plaintiffs assert this claim in relation to medical records, it still fails.

*Data Key Partners*, 356 Wis. 2d at 676 (courts must distinguish pleaded facts from pleaded legal conclusions, considering only the former on a motion to dismiss). And there is no allegation that Crossing Rivers forced, or otherwise coerced, them into providing any protected health information on the website. (*See generally* Compl.)

Third, to the extent that Plaintiffs assert this claim based on the alleged tracking of their activities on Crossing Rivers' public website, they did not have a reasonable expectation of privacy in such information. "Searching for general health information on [a healthcare provider's] public website is similar to searching for health information on Webmd.com or google.com. … Plaintiffs do not have an objectively reasonable expectation of privacy in such disclosures." *Doe I v. Sutter Health*, No. 2020 WL 1331948, at *9 (Cal.Super. Jan. 29, 2020). In short, Plaintiff has not, and cannot, plausibly allege a claim for invasion of privacy under the intrusion upon seclusion theory.

**B. Publication of Private Facts**

Under Wisconsin law, a claim for publication of private facts concerns "[p]ublicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed. It is not an invasion of privacy to communicate any information available to the public as a matter of public record." Wis. Stat. Ann. § 995.50(am)(3). To state a claim for publication of private facts under Wis. Stat. Ann. § 995.50(am)(3), Plaintiffs must allege: "(1) a public disclosure of facts regarding the plaintiff; (2) the facts disclosure are private facts; (3) the private matter made public is one which would be highly offensive to a reasonable person of ordinary sensibilities; and (4) the defendant acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter, or

with actual knowledge that none existed." *Reetz v. Advoc. Aurora Health, Inc.*, 2022 WI App 59, ¶ 18, 405 Wis. 2d 298, 318, 983 N.W.2d 669.

Plaintiffs specifically allege that they used Crossing Rivers' website to search for doctors only. Such searches do not convey information about Plaintiffs' status as a patient, seeking of medical treatment, or health conditions. Therefore, it is implausible that any tracking technologies captured such information, or that such information was conveyed to third parties as a result of, Plaintiffs' searches. The remaining categories of information that the tracking technologies allegedly conveyed to third parties—Plaintiffs' identities and locations—are likely publicly available, through a phone book or otherwise, and thus, not "private." *See* Wis. Stat. Ann. § 995.50(am)(3). Nor would a "reasonable person of ordinary sensibilities" find disclosure of such facts to be "highly offensive." Cousin v. Sharp Healthcare, No. 22-CV-2040-MMA (DDL), 2023 WL 4484441, at *6 (S.D. Cal. July 12, 2023) ("[D]isclosing a user's browsing history does not plausibly reach the level of 'highly offensive' conduct.").

For these reasons, Plaintiffs have not stated an invasion of privacy claim under the publication of private facts theory either, and their invasion of privacy claim should be dismissed in its entirety.

## IV. Plaintiffs Fail to State a Claim for Breach of Implied Contract (Count IV).

Plaintiffs' claim for breach of implied contract fails also. An enforceable contract requires that there be "an offer, acceptance, and consideration." *Linman v. Marten Transp., Ltd.*, No. 22-CV-204-JDP, 2023 WL 256712, at *5 (W.D. Wis. Mar. 17, 2023) (citing *Goosen v. Est. of Standaert*, 189 Wis. 2d 237, 247, 525 N.W.2d 314 (Ct. App. 1994)). An "implied contract" is one that is "established by the conduct of the parties, without an express written or oral agreement." *Id*. "To recover on an implied contract, the plaintiff must prove three things: (1) the defendant

requested the plaintiff to perform services; (2) the plaintiff complied with the request; and (3) the services were valuable to the defendant." *Id*. "These elements make a prima facie showing that the defendant promised to pay the plaintiff for these services." *Id*. Put differently, "those circumstances 'show a mutual intention to contract.'" *Id*. (quoting *Piaskoski & Assocs. v. Ricciardi*, 2004 WI App 152, ¶ 7, 275 Wis. 2d 650, 686 N.W. 2d 675).

Plaintiffs assert that "[a]s a condition of receiving medical care from [Crossing Rivers], Plaintiffs and the Class provided their Private Information and paid compensation for the treatment received. In so doing, Plaintiffs and Class Members entered into contracts with [Crossing Rivers] by which [Crossing Rivers] agreed to safeguard and protect such information, in its Privacy Policy and elsewhere, to keep such information secure and confidential, and to timely and accurately notify Plaintiffs…if their data had been breached and compromised or stolen." (Compl. ¶ 212.) This allegation conflates an actual contract between Crossing Rivers and its patients with the non-existent contract Plaintiffs conjured relating to Crossing Rivers' website. Simple searches of Crossing Rivers' public website have nothing to do with any patient-provider relationship; any member of the public may access Crossing Rivers' website, regardless of whether they are a patient. In addition, the existence of an actual contract between Crossing Rivers and Plaintiffs, such as the Privacy Policy, precludes their implied contract claim. *Appleton Waterworks Co. v. City of Appleton*, 132 Wis. 563, 113 N.W. 44, 47 (1907) ("If there was then an existing express contract, no implied assumpsit could arise covering the same subject.").

Further, Plaintiffs have not set forth facts suggesting that they paid for, or paid more for, medical services, to account for privacy protections that they allegedly did not receive, in anything but a conclusory manner. For all these reasons, the implied contract is also doomed.

### V. Plaintiffs Fail to State a Claim for Unjust Enrichment (Count V).

Plaintiffs have not plausibly pleaded a claim for unjust enrichment either. A claim for unjust enrichment has three parts: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value." *Puttkammer v. Minth*, 83 Wis. 2d 686, 689, 266 N.W. 2d 361, 363 (1978).

In the operative complaint, Plaintiffs allege that they supposedly "conferred a monetary benefit upon" Crossing Rivers "in the form of valuable sensitive medical information" that Crossing Rivers collected from Plaintiffs, as well as "monetary compensation." (Compl. ¶ 224.) Plaintiffs claim, without factual support, that they "would not have used" Crossing Rivers' services, "or would have paid less for those services," if they had known that Crossing Rivers would disclose their private information to third parties. (*Id.*) But there is no allegation that Crossing Rivers charged any fees to access its public website or specific facts suggesting there is some alternative rate for medical services without privacy protections. (*See generally* Compl.) Consequently, Plaintiffs have not plausibly pleaded a claim for unjust enrichment either.

In addition, should Plaintiffs' Breach of Implied Contract survive then Plaintiffs' unjust enrichment claim must fail. Unjust enrichment is an equitable claim that cannot coexist with a breach of contract claim. *Mohns Inc. v. BMO Harris Bank Nat'l Ass'n*, 2021 WI 8, ¶ 48, 395 Wis. 2d 421, 954 N.W.2d 339.

### VI. Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty (Count VI).

Plaintiffs have not properly stated a claim for breach of fiduciary duty. "To state a claim for breach of fiduciary duty under Wisconsin law, a plaintiff must allege that: (1) the defendant

owed the plaintiff a fiduciary duty; (2) the defendant breached that duty; and (3) the breach of duty caused the plaintiff's damage." *Williams v. Travelers Home & Marine Ins. Co.*, 402 F. Supp. 3d 499, 503 (E.D. Wis. 2019).

Plaintiffs allege that physicians have an ethical obligation of confidentiality to their patients that Crossing River supposedly breached by failing to safeguard their confidential information and disclosing it to third parties. (*See* Compl. ¶¶ 231-35.) But, as discussed above, it is not clear how Plaintiffs' alleged use of Crossing Rivers' public website to search for information widely available to the public is covered by any ethical obligations applicable to physicians. Nor is it clear that there is any causal connection between the alleged disclosure of minimal information about Plaintiffs' public searches and the harms that Plaintiffs' allegedly suffered. Because Plaintiffs have failed to allege particular facts to support their general theory of liability, their claim for breach of fiduciary duty should also be dismissed.

## VII. Plaintiffs Fail to State a Claim for Misrepresentation (Count VII).

Plaintiffs have not adequately stated a claim for misrepresentation either. "To state a claim of negligent misrepresentation under Wisconsin law, the plaintiff must allege that '(1) the defendant made a representation of fact; (2) the representation was untrue; (3) the defendant was negligent in making the representation; and (4) the plaintiff believed that the representation was true and relied on it.'" *Appvio, Inc. Ret. Sav. & Emp. Stock Ownership Plan by & through Lyon v. Buth*, 475 F. Supp. 3d 910, 938 (E.D. Wis. 2020) (quoting *Malzewski v. Rapkin*, 2006 WI App 183, ¶ 20, 296 Wis. 2d 98, 723 N.W.2d 156).

Here, Plaintiffs claim that Crossing Rivers made "false and deceptive representations regarding its privacy and data security practices and policies in its Privacy Policy," but do not allege that they actually reviewed that policy prior to accessing Crossing Rivers' website and

supposedly providing certain information to it. (*See* Compl. ¶¶ 242-45). They simply state, in conclusory fashion, that "Plaintiffs and Class Members believed the statements in Defendant's Privacy Policy to be true and relied on them to their detriment." (*Id.* ¶ 244.) This is insufficient. *See Devey v. Big Lots, Inc.*, 635 F. Supp. 3d 205 (W.D.N.Y. 2022) ("To establish the requisite causal connection between an alleged written misrepresentation and the resulting injury, plaintiff must plausibly allege that she actually viewed the misleading statement prior to making her decision to purchase and must set forth where, when and how [she] came to view it") (internal quotation marks and citations omitted); *Gutierrez v. Johnson & Johnson Consumer Inc.*, No. 19-CV-1345 TWR (AGS), 2021 WL 822721, at *5 (S.D. Cal. Jan. 22, 2021) ("To the extent Plaintiffs identify specific misrepresentations and advertisements that [Defendant] made, they must also allege that they viewed, read, and relied on them" to state a claim under California consumer protection laws). Because Plaintiffs have failed to allege facts supporting the conclusory statement that they relied on Plaintiffs statements to their detriment, Plaintiffs' claims should be dismissed.

## VIII. Plaintiffs Fail to State a Claim for Conversion (Count VIII).

Plaintiffs have not, and cannot, state a claim for conversion based on the purported use of private health information. Under Wisconsin law, "[c]onversion is the intentional, unauthorized control of another's chattel so as to interfere with the owner's possessory rights" and "[a] person is liable for conversion when he or she (1) intentionally controls or takes property belonging to another, (2) without the owner's consent, (3) resulting in serious interference with the owner's rights to possess the property." *Midwestern Helicopter, LLC v. Coolbaugh*, 2013 WI App 126, 351 Wis. 2d 211, 217, 839 N.W.2d 167, 170. "A plaintiff in a conversion action must prove that he was in possession of or entitled to immediate possession of the chattel that was converted." *Farm Credit Bank of St. Paul v. F & A Dairy*, 165 Wis. 2d 360, 371, 477 N.W. 2d 357, 361 (Ct. App.

1991). Chattel "is an article of personal property—a thing personal and movable. [] It must consist of something identifiable and tangible." *Maryland Staffing Servs., Inc. v. Manpower, Inc.*, 936 F. Supp. 1494, 1507 (E.D. Wis. 1996) (citing Black's Law Dictionary (5th Edition) at 215).

It is unclear which "property" Crossing Rivers supposedly controlled or took giving rise to this claim. As discussed above, even if tracking technologies captured Plaintiffs' searches for doctors, it would not have captured Plaintiffs' confidential health information. And even if they had, such information is not a tangible thing, "personal and movable," that can be "converted" under Wisconsin law. *See Vavro v. Albers*, No. 2:05CV321, 2006 WL 2547350, at *15 (W.D. Pa. Aug. 31, 2006), *aff'd sub nom. Vavro v. A.K. Steel Co.*, 254 F. App'x 134 (3d Cir. 2007) ("[A] property interest in medical information is an intangible right that is not customarily merged in or identified with some document, and therefore, cannot be the subject of a conversion claim."). Therefore, Plaintiffs have not, and likely cannot, state a valid claim under Wisconsin law. Their conversion claim should be dismissed with prejudice.

### IX. Plaintiffs Fail to State a Claim for Violation of Wisconsin Deceptive Trade Practices Act, Wis. Stat. Ann. § 100.18 (Count IX).

The Wisconsin Deceptive Trade Practices Act ("DTPA") is intended "to protect consumers from untrue, deceptive or misleading representations made to promote the sale of a product." *T&M Farms v. CNH Indus. Am., LLC*, 488 F. Supp. 3d 756, 759 (E.D. Wis. 2020). To state a claim under the DTPA, a plaintiff must allege that: "(1) the defendant made a representation to one or more members of the public with the intent to induce an obligation; (2) the representation was untrue, deceptive or misleading; and (3) the representations materially induced pecuniary loss to the plaintiff." *Id*. at 760.

Here, as in the case of Plaintiffs' other claims, the allegations supporting the claims are impermissibly vague. Plaintiffs identify certain statements in Crossing Rivers' privacy policy,

which they claim were untrue. (*See* Compl. ¶ 257.) They then assert that had "Plaintiffs and Class Members been aware that their Private Information would be transmitted to unauthorized third parties, they would not have entered into such transactions and would not have provided payment or their confidential information." (*Id.* ¶ 258.) There is no explanation of what is meant by "such transactions"—whether that include accessing Crossing Rivers' public website, receiving medical treatment at Crossing Rivers, or something else. (*Id.*) Moreover, it is not clear when, if ever, Plaintiffs reviewed the so-called misrepresentations relative to the "transactions" that they now seek to disavow. If they reviewed the privacy policies sometime after the relevant transaction, then it is not plausible that the representations "materially induced" them to suffer a pecuniary loss.

Nor, for that matter, is it even clear what pecuniary loss they allegedly suffered. Plaintiffs assert, without support, that they "were deprived of the benefit of their bargain since the medical services and data security purchased were worth less than they would have been if those services had been provided without Disclosure of their Private Information." (*Id.* ¶ 259.) But Plaintiffs do not allege any facts surrounding payments made to Crossing Rivers for medical services, much less facts suggesting that those payments covered data security protections. (*See generally* Compl.) Accordingly, Plaintiffs' Wisconsin Deceptive Trade Practices Act claim should be dismissed as well.

**X. Plaintiffs Fail to State a Claim for Interception and Disclosure of Wire, Electronic, or Oral Communications, Wis. Stat. Ann. § 968.31 (Count X).**

Plaintiff has not alleged a claim under the Wis. Stat. Ann § 968.31 either. That section governs the interception and use of various communications. Under § 968.31(2)(c), a "person not acting under color of law" may "intercept a wire, electronic, or oral communication where the person is a party to the communication or where one of the parties to the communication has given prior consent to the interception…." In other words, Wisconsin is a one-party consent state.

Plaintiffs allege that Crossing Rivers intercepted certain communications made through Crossing Rivers' website to which Crossing Rivers and/or its employees were part. (*See* Compl. ¶¶ 266-70.) Because it is not unlawful under § 968.31 for a party to a communication to intercept and then disclose a communication to which it was part, except in limited circumstances not applicable here, Plaintiffs have no claim against Crossing Rivers under § 968.31 against Crossing Rivers.

### XI. Plaintiffs Fail to State a Claim for Violation of Confidentiality of Patient Health Care Records Law, Wis. Stat. Ann. § 146.82 (Count XI).

To state a claim under this Law, a plaintiff must allege that his or her patient health care records were released without informed consent. The Law defines "patient health care records" to include only records related to the health of a patient *prepared by or under the supervision of a health care provider*. Wis. Stat. Ann. § 146.81(4).

Plaintiff alleges in conclusory fashion that Crossing Rivers "disclosed the private and protected medical information of Plaintiffs and Class Members to unauthorized third parties." (Compl. ¶ 282.) But they do not set forth specific facts suggesting that any information disclosed to third parties amounted to protected "patient health care records." Accordingly, this claim must also be dismissed.

## CONCLUSION

For the reasons set forth above, Crossing Rivers respectfully requests that Plaintiff's Complaint be dismissed in its entirety.