**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| JANE DOE and JANE ROE, Individually, and on behalf of all others similarly situated, | ) | |
| *Plaintiffs*, | ) | |
| v. | ) | Case No. 3:24-cv-00067-WMC |
| PRAIRIE DU CHIEN MEMORIAL HOSPITAL ASSOCIATION, INC. D/B/A CROSSING RIVERS HEALTH | ) | |
| *Defendant.* | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS


INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ......................................................................................... 3

STANDARD .............................................................................................................. 5

ARGUMENT .............................................................................................................. 6

A. Plaintiffs sufficiently stated a claim for negligence ............................................ 7

a. Plaintiffs sufficiently alleged duty ......................................................................... 8

b. Plaintiffs sufficiently allege causation .................................................................. 9

B. Plaintiffs sufficiently stated a claim for negligence *per se* .................................. 10

C. Plaintiffs sufficiently stated a claim for invasion of privacy ................................ 13

a. Plaintiffs sufficiently alleged intrusion upon seclusion ……………………….....13

b. Plaintiffs sufficiently alleged publication of private facts………………………15

D. P Plaintiffs sufficiently alleged breach of implied contract ................................. 17

E. Plaintiffs sufficiently alleged unjust enrichment .................................................. 19

F. Plaintiffs sufficiently alleged breach of fiduciary duty ......................................... 20

G. Plaintiffs sufficiently alleged misrepresentation .................................................. 22

H. Plaintiffs sufficiently alleged conversion ............................................................. 24

I. Plaintiffs sufficiently alleged violation of Wisconsin consumer protection ......... 25

J. Plaintiffs sufficiently alleged violation of Wisconsin wiretap .............................. 27

K. Plaintiffs sufficiently alleged violation of Wisconsin health care confidentiality records act ........................................................................................................... 29

CONCLUSION ........................................................................................................ 31

## TABLE OF AUTHORITIES

**Cases**

*Antwaun A. v. Heritage Mutual Inc. Co.*,
228 Wis. 2d 44, 66-67, (Wis. 1999) ........ 11

*Arrowhead Sys. v. Parker*,
2014 WI App 24, 352 Wis. 2d 755, 843 N.W.2d 711 ........ 23

*Bach v. Kopatich*,
2012 WI App 11, 338 Wis. 2d 486, 808 N.W.2d 742 ........ 28

*Bank of Sun Prairie v. Esser*,
155 Wis. 2d 724, 734, 456 N.W.2d 585 (1990) ........ 23

*Banuelos v. Univ. of Wis. Hosps. & Clinics Auth.*,
2023 WI 68 ........ 31

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 555 (2007) ........ 6

*Bitner v. Securitas Sec. Servs., Inc.*,
No. 10-1255, 2011 WL 1044382, at *1 (C.D. Ill. Mar. 23, 2011) ........ 6

*C. M. v. MarinHealth Med. Grp.*, Inc.,
No. 23-CV-04179-WHO, 2024 WL 217841, at *4 (N.D. Cal. Jan. 19, 2024) ........ 19

*Conley v. Gibson*,
355 U.S. 41, 47 (1957) ........ 6

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117, 1127 (S.D. Cal. 2023) ........ 17

*Cromeens, Holloman, Sibert, Inc. v. AB Volvo*,
349 F.3d 376, 397 (7th Cir. 2003) ........ 21

*Dieffenbach v. Barnes & Noble, Inc.*,
887 F.3d 826, 830 (7th Cir. 2018) ........ 2

*Doe I v. Sutter Health*,
No. 34-2019-00258072-CU-BT-GD, 2020 WL 1331948 (Cal. Super. Jan. 29, 2020) ........ 8

*Doe v. Tenet healthcare Corp.*,
No. CV 23-12978-PBS, 2024 WL 1756075, at *4 (D. Mass. Apr. 23, 2024) ........ 1

*Estate of Cavanaugh v. Andrade*,
202 Wis.2d 290, 306 (1996) ........................................................................................ 10

*Firestone Fin. Corp. v. Meyer*,
796 F.3d 822, 827 (7th Cir. 2015) ........................................................................... 6, 15

*Fox v. Iowa Health Sys.*,
399 F. Supp. 3d 780, 804 (W.D. Wis. 2019) ................................................................. 13

*Gunn v. Cont'l Cas. Co.*,
968 F.3d 802, 806 (7th Cir. 2020) ................................................................................. 6

*H.A. Friend & Co. v. Professional Stationery, Inc.*,
294 Wis. 2d 754, 763 (Wis. App. 2006) ......................................................................... 25

*Harrison v. City of Milwaukee*,
49 Wis. 247 (1880) ....................................................................................................... 14

*In re Cmty. health Data Incident Litigation*,
No. 49D01-2211-PL-041242 at *8-12 ............................................................................ 19

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
371 F. Supp. 3d 1150, 1176 (N.D. Ga. 2019) ........................................................... 12, 13

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589, 606 (9th Cir. 2020) ................................................................................ 17

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
No. 19-MD-2879, 2020 WL 6290670, at *21–23 (D. Md. Oct. 27, 2020)............................. 13

*In the Matter of LabMD, Inc., A Corp, 2016-2 Trade Cas,*
2016 WL 4128215 (MSNET July 28, 2016) .................................................................... 12

*Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co., Inc.*,
192 F.3d 724, 730 (7th Cir. 1999) ................................................................................ 10

*J.H. Desnick v. Am. Broad. Cos.*,
44 F.3d 1345, 1353 (7th Cir. 1995) ............................................................................... 28

*Johnson v. Revenue Management Corp.*,
169 F.3d 1057, 1059 (7th Cir. 1999) ............................................................................. 10

*K&S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*,
2007 WI 70 ................................................................................................................... 26

*Katz-Lacabe v. Oracle Am., Inc.*,
No. 22-cv-04792-RS, 2023 WL 2838118 at *7 (N.D. Cal. Apr. 6, 2023)............................... 17

*Lamie v. Lendingtree, LLC*,
No. 3:22-cv-00307-FDW-DCK, 2023 WL 1868198, at *4 (W.D.N.C. Feb. 9, 2023)............ 13

*Lax v. Mayorkas*,
20 F.4th 1178, 1181 (7th Cir. 2021) .......................................................................... 6

*Lewert v. P.F. Chang's China Bistro, Inc.*,
819 F.3d 963, 970 (7th Cir. 2016) .............................................................................. 2

*Linman v. Marten Transp., Ltd.*,
No. 22-CV-204-JDP, 2023 WL 2562712 (W.D. Wis. Mar. 17, 2023)..................................... 2

*Mahner ex rel. Wendorff v. Rew Motors, Inc.*,
2007 WI App 1........................................................................................................ 10

*McGeshick v. Choucair*,
9 F.3d 1229, 1234 (7th Cir. 1993) .............................................................................. 21

*McKenzie v. Allconnect, Inc.*,
369 F. Supp. 3d 810, 822 (E.D. Ky. 2019) .................................................................... 6

*Metavante Corp. v. Emigrant Sav. Bank*,
619 F.3d 748, 767 (7th Cir. 2010) .............................................................................. 22

*Methodist Manor of Waukesha, Inc. v. Martin*,
2002 WI App 130 (Ct. App. 2002) .............................................................................. 24

*Mgmt. Comput. Servs.*
206 Wis. 2d 158, 189 ................................................................................................ 25

*Mrozinski, et. al., v. Aspirus, Inc.,*
No2023CV000170 (Wis. Cir. Ct. April 18, 2024)................................................. 2, 14, 18, 20

*N. Grp., Inc. v. Tech 4 Kids Inc.*,
352 F. Supp. 3d 882, 888 (E.D. Wis. 2018).................................................................. 20

*Perdue Inc.*,
455 F. Supp. 3d at 760–61, 763 ................................................................................. 13

*Pierre v. Logcrafters, L.L.C.*,
2000 WI App 161, 238 Wis. 2d 94, 617 N.W.2d 677 ...................................................... 23

*Remijas v. Neiman Marcus Grp., LLC*, 7
94 F.3d 688, 697 (7th Cir. 2015) ........................................ 2

*Schaefer v. Johnson Financial Group, Inc.*,
No. 2023CV1483 (Wis. Cir. Ct. May 6, 2024)........................................ 2, 8, 9, 20

*Schuster v. Altenberg*,
144 Wis.2d 223, 251 (1988) ........................................ 8

*See In re Meta Pixel Healthcare Litig*.,
2022 WL 17869218, at *9 (N.D. Cal. Dec. 22, 2022)........................................ 29

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), aff'd, 745 F. App'x 8 (9th Cir. 2018)........................................ 8

*State v. Floyd*,
377 Wis. 2d 394, 417 (2017) ........................................ 14

*Steinberg v. Jensen,*
194 Wis. 2d 439, 465 (1995) ........................................ 8, 16

*Swearingen v. Momentive Specialty Chemicals, Inc.*,
662 F.3d 969, 972 (7th Cir. 2011) ........................................ 10

*Taft v. Derricks,*
2000 WI App 103........................................ 11

*United States v. Snook*,
366 F.3d 439, 447 (7th Cir. 2004) ........................................ 21

*Valente v. Sofamor, S.N.C.*,
48 F. Supp. 2d 862, 875 (E.D. Wis. 1999)........................................ 11, 12

*Winkel v. Prod. Credit Ass'n of E. Cent. Wisconsin*,
153 Wis. 2d 550, 556 (Ct. App. 1989)........................................ 12

## INTRODUCTION

Defendant Prairie Du Chien Memorial Hospital Association, Inc. d/b/a Crossing Rivers Health ("Defendant") purposefully installed third-party trackers on its website. When patients like Plaintiffs visited its website, the trackers recorded patients' confidential health communications with Defendant. The trackers then disclosed those communications to third parties, like Facebook and Google, without patient consent. Defendant admits these allegations.

Of course, "[w]hen a patient uses a healthcare provider's website to communicate or transfer confidential health or personal data, [they have] a reasonable expectation under HIPAA, as well as the privacy policies, that the information will be kept private and not sold to third-party companies." *Doe v. Tenet healthcare Corp.*, No. CV 23-12978-PBS, 2024 WL 1756075, at *4 (D. Mass. Apr. 23, 2024). Defendant's behavior entirely ignored this reasonable expectation, instead egregiously violating Plaintiffs' rights.

Defendant now tries to excuse its behavior by arguing that the hospital's use of these tracking technologies is "commonplace." But the ordinality or popularity of illegal activity does not make it any more legal or acceptable. Defendant similarly argues that the tracking technologies were on "public-facing" webpages and activity on those public webpages. But not only does that ignore Plaintiffs' allegations, but is also insufficient to necessitate dismissal of their claims. Simply put, the trackers record and send information to third parties showing exactly what patients like Plaintiffs do on the website. This starts with the identity of the visitor and includes the visitor's searching for treatment options, finding a doctor, the specific words used in the search function, and the specific keyword searches for doctors, medical conditions and treatment. Visitors' browsing activities beyond the homepage were all tracked and shared, including viewing other

content such as Defendant's patient portal, medical records and billing, appointment activities, registering for events, and medical services pages.

In short, Defendant's argument that Plaintiffs failed to sufficiently plead their claims entirely ignores Plaintiffs' pleadings that Defendants disclosed their individual, confidential, personal, private, health information to unauthorized third parties, and the many subsequent harms, as discussed in detail herein. Defendant's excuses are insufficient under the eyes of the law; arguing 'other people do it too,' ignoring the complaint's allegations, and recasting Plaintiffs' Amended Complaint cannot rise to the level required to dismiss Plaintiffs' Amended Complaint. Courts in Wisconsin, the Seventh Circuit, and across the country recognize this. *See, e.g., Mrozinski, et. al., v. Aspirus, Inc.,* No2023CV000170 (Wis. Cir. Ct. April 18, 2024) (attached as Exhibit B) (in a pixel case, allowing similar claims to proceed); *Reetz v. Advoc. Aurora Health, Inc.*, 405 Wis. 2d 298 (Ct. App. 2022) (allowing similar claims in data breach context); (same); *Schaefer v. Johnson Financial Group, Inc.,* No. 2023CV1483 (Wis. Cir. Ct. May 6, 2024) (attached as Exhibit C) (same); *Linman v. Marten Transp., Ltd.*, No. 22-CV-204-JDP, 2023 WL 2562712 (W.D. Wis. Mar. 17, 2023) (same); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 697 (7th Cir. 2015) (finding, in similar data breach allegations, that plaintiff adequately alleged standing to bring similar claims); *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 970 (7th Cir. 2016) (same); *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 830 (7th Cir. 2018) (same); *see also* Exhibit A-1 (listing **sixty-four** orders denying motions to dismiss in cases with allegations practically identical to those here).

Defendant argued no valid legal reason why Plaintiffs' claims should be dismissed. Plaintiffs sufficiently stated their claims. Defendant failed to meet its burden, and Plaintiffs thus ask that this Court deny Defendant's motion to dismiss in its entirety.

## FACTUAL BACKGROUND

Defendant is a health care network located in Prairie du Chien, Wisconsin. It operates a "25-bed Critical Access Hospital" as well as a "state-of the-art Medical Center and two primary care clinics" and offers "[m]ore than 100 services," ranging "[f]rom scrapes and breaks to preventative care." ¶¶2.[1] Plaintiffs Jane Doe and Jane Roe, individually, and on behalf of all others similarly situated, (hereinafter "Plaintiffs") are Defendant's patients. *Id.* ¶¶97, 107. Defendant secretly and without authorization used tracking technologies to disclose Plaintiffs' Personally Identifying Information ("PII") and/or Protected health Information ("PHI") (collectively referred to as "Private Information") to third parties including Meta Platforms, Inc. ("Facebook" or "Meta"), Google, LLC ("Google"), Simplifi, DoubleClick, CrazyEgg, and potentially others ("the Disclosure"), via website tracking technologies, for the purpose of enhancing its online advertising efforts and increasing its profits. *Id.* at ¶¶ 1, 6-21.

At Defendant's direction and encouragement, Plaintiffs used its website, including to search for doctors specializing in emergency medicine, cardiology, anesthesiology, primary care, and podiatry using the "Provider Directory" on the Website search for doctors specializing in primary care and obstetrics/gynecology using the "Provider Directory" on the Website. they also used the website's general search bar to search for "OBGYN." ¶¶ 7, 97-116. Unbeknownst to Plaintiffs, Defendant used third-party tracking technology to secretly capture and recorded their interactions with its website, including the content they viewed, the services and medical conditions they searched, the contents of their search queries, and the search results that they clicked. ¶¶ 9-11, 16, 33, 70-88, 91-92, 97-116. Using these trackers, Defendant transmitted that information to unauthorized third parties uninvolved in their health care or treatment, such as

**[1] All references herein to "¶" refer to paragraphs in the Amended Complaint.**

Facebook and google, revealing Plaintiffs' personal information, such as their identity, their status as a patient, their seeking of treatment, their they health conditions and the treatment they sought, and their location. *Id.* Since their use of Defendant's website, Plaintiffs have received targeted online advertisements, including related to prescription medications (including Eliquis and Plavix), cardiology, toe fungus, doctors, birth control and menopause, as well as ads aimed at women, urging them to "take charge of [thei]r health." ¶¶103, 113. Plaintiffs reasonably believed such Private Information would be maintained as confidential. ¶¶99, 109.

Moreover, Defendant made these unauthorized disclosures in violation of its express promises to Plaintiffs contained in the Notice of Privacy Practices ("Privacy Policy") that is posted and maintained on Defendant's Website. ¶¶62-70. Therein, Defendant represents that: the Privacy Policy "describes how your medical information may be used and disclosed and how you can get access to your information"; it "will maintain the privacy of your personal health information (PHI)"; the "Notice of Privacy Practice describes our legal duties and privacy practices concerning your personal health information"; "[i]n general, when we release your health information, we release information only for treatment, payment, and health care operations"; "[u]nless you object, we may use your health information to inform you of products or services that we believe may be of interest to you. For example, we might contact patients receiving cancer treatment to notify them of the availability of an innovative treatment"; "[e]xcept for the situations listed above, we must obtain your specific written authorization for any other use or disclosure of your health information [which] **includes marketing activities conducted by third parties or where a third party seeks to purchase protected health information**"; "[i]f there should be a breach of data security and your personal health information is stolen, we will notify you by letter containing details of the breach in a timely manner." *Id.* (emphasis added). Defendant proceeded to break

each of these promises by sharing Plaintiffs' protected health information with Facebook, Google, and other unauthorized third parties, without Plaintiffs' permission and for the purpose of enhancing its marketing efforts and increasing its profits. ¶¶ 70, 71-96, 91-92.

Online tracking technologies do nothing to provide substantive web content or health-care related services. ¶¶91-92. Instead, they exist to capture personal data to be used to improve ad targeting and bolster the profits of the healthcare provider, Facebook, and other third-party tracker providers. *Id.* In a bulletin issued in December 2022 to highlight the obligations of entities covered by the health Insurance Portability and Accountability Act ("HIPAA"), the U.S. Department of health and Human Services ("HHS") notified health care providers like Defendant that the "disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPAA-compliant authorizations," constitute "impermissible disclosures." ¶¶125-33. HHS revised and updated its guidance in March 2024, in a Bulletin in large part the same as the December 2022 Bulletin, only changed to expand the circumstances in which the disclosure of information from unauthenticated website visitors is considered a violation of HIPAA.

Plaintiffs suffered injuries, including monetary damages, loss of privacy, unauthorized disclosure of and access to their Private Information to third parties, use of their Private Information for advertising purposes, embarrassment, humiliation, frustration, and emotional distress, diminution of the value of their Private Information, lost benefit of their bargain, and increased risk of future harm from further unauthorized use and disclosure of their information. ¶¶ 106, 116, 190-91, 202, 255.

## STANDARD

When considering a motion to dismiss under Fed. Rule Civ. P. 12(b)(6), courts must consider "not whether a complaint's factual allegations are true, but rather whether the complaint

"contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 827 (7th Cir. 2015). In other words, the court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded facts as true, and draw all reasonable inferences in the plaintiff's favor." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). "It is the defendant's burden to establish the complaint's insufficiency." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020).

Rule 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, giving "the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion need not contain detailed allegations, it must have "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. Under the federal notice pleading standard, a plaintiff's allegations need only "place Defendant on notice of the claims being asserted against it to allow Defendant to formulate a defense." *Bitner v. Securitas Sec. Servs., Inc.*, No. 10-1255, 2011 WL 1044382, at *1 (C.D. Ill. Mar. 23, 2011).

**ARGUMENT**

Defendant "makes a familiar and mechanical argument," *McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 822 (E.D. Ky. 2019), that Plaintiffs' claims must fail because they failed to sufficiently allege the elements of their claims. Defendant's Memorandum in Support of its Motion to Dismiss ("MTD"). But as demonstrated in great detail below, Plaintiffs allege each element necessary for each of their claims. Defendant cannot excuse its actions by shifting the burden, taking issues with Plaintiffs' allegations, and arguing 'other healthcare providers also routinely violate other patients' rights.' Defendant's motion must thus be denied.

**A. Plaintiffs sufficiently stated a claim for negligence**

Plaintiffs pleaded Defendant's Disclosure breached its common law duty to exercise reasonable care in handling their Private Information, which caused them harm. *See* ¶¶ 184-92 ("Defendant owed to Plaintiffs and Class Members a duty to exercise reasonable care in handling and using Plaintiffs' and Class Members' Private Information . . . Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers in the handling and securing of Private Information. . . [which] actually and proximately caused Plaintiffs'[] injuries . . . As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiffs and Class Members have suffered or will suffer damages, including monetary damages, inappropriate advertisements and use of their Private Information for advertising purposes, and increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress."). These allegations are sufficient under Wisconsin law. *See Reetz*, 2022 WI App 59, ¶ 11-17 (finding plaintiff sufficiently stated a claim for negligence in similar data breach context; "[t]he four elements of a negligence claim are: "(1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty of care, (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's injury, and (4) actual loss or damage resulting from the injury.").[2]

Defendant's motion challenges only the elements of duty and causation. MTD p. 5-8. But Defendant's argument ignores Plaintiffs' allegations. Wisconsin law recognizes a duty to protect patients' confidential information, and causation is a fact issue that is adequately alleged in the Amended Complaint and cannot be decided on a motion to dismiss. Wisconsin courts have rejected arguments just like Defendant's here, and the Court should similarly reject Defendant's

[2] **Courts across the country have found the same. *See* Exhibit A-3 (listing orders denying similar motions to dismiss negligence claims).**

arguments and allow Plaintiffs' claim to proceed. *See Reetz*, 405 Wis. 2d 298; *Schaefer,* (Exhibit C); Linman, 2023 WL 2562712.

*a. Plaintiffs sufficiently alleged duty*

Defendant's claim that it had no duty to Plaintiffs to exercise reasonable care in handling their PHI, MTD p. 5, is inconsistent with both the allegations of the Complaint and established Wisconsin law. As the Amended Complaint alleges, Defendant, as Plaintiff's health care provider, had a duty to protect Plaintiff's confidential Private Health Information from disclosure to third parties. *See* ¶¶140-144, 185. There is no question that Wisconsin recognizes such a duty. *See Steinberg v. Jensen,* 194 Wis. 2d 439, 465 (1995). As *Steinberg* held, health care providers "owe an ethical duty of confidentiality to their patients that is broader than the express language of the statutory physician-patient privilege." *Id*. (citing *Schuster v. Altenberg*, 144 Wis.2d 223, 251 (1988)).

Defendant engages with these allegations, is thus clearly on notice of this claim and can formulate a defense because Defendant attempts to skirt Plaintiffs' allegations and Wisconsin law in order to bolster its defenses. Rather than deal with on-point Wisconsin law, Defendant cites two inapposite cases from other states. MTD p. 5 (citing *Doe I v. Sutter Health*, No. 34-2019-00258072-CU-BT-GD, 2020 WL 1331948 (Cal. Super. Jan. 29, 2020) and *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943 (N.D. Cal. 2017), aff'd, 745 F. App'x 8 (9th Cir. 2018)). Neither case involved the duty of a health care provider as an element of a negligence claim. Indeed, neither involved a negligence claim against a health care provider at all. *Sutter Health* involved whether the particular information alleged in that complaint was "medical information" under a California statute. 2020 WL 1331948, at *4. And *Smith* involved only claims against Facebook, and held those claims were barred by a user's consent to Facebook's terms of service. 262 F. Supp. 3d at 956. In contrast to these out of state cases, Wisconsin courts in similar data breach circumstances

allow claims just like Plaintiff's here. *See Reetz*, 405 Wis. 2d 298; *Schaefer,* (Exhibit C); Linman, 2023 WL 2562712.[3]

*b. Plaintiffs sufficiently allege causation*

Plaintiffs have also sufficiently alleged causation. As the Wisconsin Supreme Court has held, causation is a question of fact, which should be allowed to proceed on these allegations. *See Reetz*, 405 Wis. 2d 298; *Schaefer,* (Exhibit C); Linman, 2023 WL 2562712. Accordingly, the Court should find the causation element met for purposes of this motion.

The allegations of causation in the Amended Complaint are explicit and specific: "[a]s a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiffs and Class Members have suffered or will suffer damages, including monetary damages, inappropriate advertisements and use of their Private Information for advertising purposes, and increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress." ¶190. The Amended Complaint further alleges "Defendant's breach of its common-law duties to exercise reasonable care proximately caused Plaintiffs' and Class Members' actual, tangible, injury-in-fact and damages, including, without limitation, the unauthorized access of their Private Information by third parties, improper disclosure of their Private Information, lost benefit of their bargain, and lost value of their Private Information." ¶191. These allegations are more than sufficient to plead causation. And Defendant's allegations demonstrate that it is clearly on notice of this claim and can formulate a defense because it attempts to skirt Plaintiffs' allegations and Wisconsin law in order to bolster its defenses.

As the Wisconsin Courts have held, "causation is a factual question." *Mahner ex rel. Wendorff v. Rew Motors, Inc.*, 2007 WI App 1, ¶ 27, (citing *Estate of Cavanaugh v. Andrade*, 202

---

**[3] This is in line with Courts across the country considering claims like Plaintiffs' here. *See* Exhibit A-3.**

Wis.2d 290, 306 (1996)). The Seventh Circuit has likewise held that "[w]hether a duty is owed presents a question of law, while breach of duty and proximate cause present questions of fact." *Swearingen v. Momentive Specialty Chemicals, Inc.*, 662 F.3d 969, 972 (7th Cir. 2011). Because causation is a question of fact, Defendant's request that this Court resolve it on a motion to dismiss is improper because "fact-finding has no part in resolving a Rule 12(b)(6) motion. . ." *Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co., Inc.*, 192 F.3d 724, 730 (7th Cir. 1999) (quoting *Johnson v. Revenue Management Corp.*, 169 F.3d 1057, 1059 (7th Cir. 1999). As the Wisconsin Court of Appeals held in *Mahner*, "[a]ny dispute over causation . . . requires a trial for the fact-finder to weigh competing evidence and reach a conclusion." Accordingly, this Court should find Plaintiffs sufficiently pleaded causation and deny Defendant's motion to dismiss.

Thus Defendant has failed to meet its burden. Defendant is clearly on notice of this claim and can formulate a defense because it attempts to skirt Plaintiffs' allegations in order to bolster its defenses. Defendant's motion must be denied.

### B. Plaintiffs sufficiently stated a claim for negligence *per se*

Plaintiffs have also properly stated a claim for negligence *per se*. Plaintiffs alleged Defendant's disclosure of Plaintiffs' Personal Information breached the duty it owed them under common law, the FTC Section 5, and HIPAA, to safeguard their Personal Information, causing their injury. ¶¶193-204. These allegations are sufficient under Wisconsin law, and Defendant's arguments otherwise ignore Wisconsin law and Plaintiffs' allegations.[4] Defendant's argument that HIPPA and the FTC Act cannot serve as the basis for a negligence *per se* theory because those statutes do not provide a private cause of action is inconsistent with Wisconsin law.

---

[4] **Courts across the country have found the same. *See* Exhibit A-4 (listing orders denying similar motions to dismiss negligence claims).**

Defendant argues that Plaintiffs' claim failed to meet the elements required for negligence *per se*. But Defendant is either confused about Wisconsin law or Plaintiffs' allegations. "Negligence *per se* arises when the legislature defines a person's standard of care in specific instances." *Taft v. Derricks,* 2000 WI App 103, ¶ 11. Certainly, the legislature defined a person's standard of care with HIPAA and the FTC Act. To prevail on such a claim, plaintiff must show: (1) the harm inflicted was the type the statue was designed to prevent; (2) the person injured was within the class of persons sought to be protected; and (3) there is some legislative intent that the statute become a basis for the imposition of civil liability. *Antwaun A. v. Heritage Mutual Inc. Co.*, 228 Wis. 2d 44, 66-67, (Wis. 1999); *Valente v. Sofamor, S.N.C.*, 48 F. Supp. 2d 862, 875 (E.D. Wis. 1999).

Here, Plaintiffs plead the necessary elements of a negligence *per se* claim under Wisconsin law. Plaintiffs' negligence per se allegation specifically alleges that HIPAA and the FTC Act inform the duty for their negligence claim. Plaintiffs further specifically plead that the harm that occurred in the Disclosure is the type of harm HIPAA and the FTC Act are intended to guard against. ¶195. Plaintiffs allege, for example, that these two statutes require Defendant "to maintain adequate and reasonable data and cybersecurity measures to maintain the security and privacy of Plaintiffs' and Class Members' Private Information. . . . to detect and prevent the loss or unauthorized dissemination of Plaintiffs' and Class Members' PII and PHI . . . to timely and adequately inform Plaintiffs and Class Members, in the event of their PII and PHI being improperly disclosed to unauthorized third parties. . . . [and] Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiffs' and Class Members' PII and PHI and not complying with applicable industry standards as described in detail herein" ¶¶ 195-201. The Disclosure—where the privacy and security of Plaintiffs' Private Information was

not adequately and reasonably maintained—caused just that foreseeable harm, that is, the Plaintiffs' data was disclosed without consent.

That these statutes were promulgated to protect Plaintiff from the harms they suffered here is reflected, for example, by the enforcement actions pursued by the FTC against businesses that fail to adequately safeguard personal information. *See, e.g.*, *In the Matter of LabMD, Inc., A Corp, 2016-2 Trade Cas. (CCH) ¶ 79708*, 2016 WL 4128215 (MSNET July 28, 2016) (finding that failure to protect personal information of consumers by failing to protect its computer network or employ adequate risk assessment tools was an unfair act or practice under the FTC Act); Am. Compl. ¶ 76. And Plaintiffs are of course within the class of persons these statutes were designed to protect—for example, the FTC Act is designed to protect consumers who entrusted valuable personal information to companies, expecting it will be adequately protected.

And through these statutes, Congress obviously intended to provide a basis for civil liability. While the FTC Act and HIPAA do not contain private causes of action, this does not preclude them from supplying the standard of care for a negligence *per se* claim. *See, e.g., In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 371 F. Supp. 3d 1150, 1176 (N.D. Ga. 2019); *Winkel v. Prod. Credit Ass'n of E. Cent. Wisconsin*, 153 Wis. 2d 550, 556 (Ct. App. 1989) (allowing claim based on Farm Credit Act, which has no private cause of action); *see also Valente v. Sofamor*, S.N.C., 48 F. Supp. 2d 862, 876 (E.D. Wis. 1999) ("while the law is settled that Congress did not expressly intend for the FDCA to become a basis for civil liability under federal law, 'intent may be inferred from the language and the surroundings of the statute.'").

The Wisconsin trial courts have upheld negligence *per se* claims under Wisconsin law premised on violation of the standard of care in the FTC Act. *See, e.g., Perdue Inc.*, 455 F. Supp. 3d at 760–61, 763. In *Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 804 (W.D. Wis. 2019), the

court found that certain plaintiffs could proceed on claims for negligence and negligence per se under Wisconsin law. Other courts have specifically found allegations based on FTC Act and HIPAA violations to be sufficient to support a negligence per se claim in the context of unauthorized disclosure of personal information. *See, e.g., In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2020 WL 6290670, at *21–23 (D. Md. Oct. 27, 2020) (FTC Act can support a negligence per se claim); *In re Equifax*, 362 F. Supp. 3d at 1327 (same); *Lamie v. Lendingtree, LLC*, No. 3:22-cv-00307-FDW-DCK, 2023 WL 1868198, at *4 (W.D.N.C. Feb. 9, 2023) (same).[5]

Thus Defendant has failed to meet its burden. Defendant is clearly on notice of this claim and can formulate a defense because it attempts to skirt Plaintiffs' allegations in order to bolster its defenses. Defendant's motion must be denied.

**C. Plaintiffs sufficiently stated a claim for invasion of privacy**

Defendant argues Plaintiff's invasion of privacy claim for intrusion upon seclusion should be dismissed because it does not allege a "physical" intrusion, and that Plaintiff's "public disclosure of private facts" claim should be dismissed because Defendant's disclosure was not sufficiently public. MTD p. 9-12. Defendant is wrong on both counts. Not surprisingly, Wisconsin courts, as well as those across the country, have refused to dismiss invasion of privacy claims arising out of the defendant's use of tracking technology. *See, e.g., Mrozinski*, (Exhibit B).[6]

**a. Plaintiffs sufficiently alleged intrusion upon seclusion**

None of Defendant's three bases for dismissal – (1) that Plaintiffs' allegations do not relate to any physical place; (2) that Plaintiffs voluntarily provided information to Defendant; or (3) that

---

[5] **Defendant also argues no causation supports Plaintiffs' claim here, but Plaintiff has already addressed that argument above.**

[6] ***See also* Exhibit A-6 (listing orders denying similar motions to dismiss privacy claims).**

the information involved was not private – MTD p. 9-10, is correct. As to physical location, Plaintiffs allege that Defendant used the Meta Pixel, a website-based tracker that acted as a traditional bug, to surreptitiously monitor and transmit everything the Plaintiffs typed and read on their physical personal devices, even as they did so in the most private of locations, including their homes and the physical location immediately surrounding their persons. Construing the allegations of the Amended Complaint in a light most favorable to Plaintiff—as the Court must—this is an intrusion or invasion into Plaintiffs' private, physical space. *See Community Health*, at 7-8.

Nor is Defendant's assertion that Plaintiffs "voluntarily" provided their Private Information to Defendant, MTD p. 9, a sufficient basis to dismiss the claims. As Plaintiffs alleged, they provided their Private Information believing that they were communicating solely with their trusted health care provider, and without knowledge that provider was forwarding their communications to third parties like Facebook and Google. ¶ 8. An action induced by a misrepresentation is not "voluntary." *See State v. Floyd*, 377 Wis. 2d 394, 417 (2017) (in the context of a police search, misrepresentation can render consent involuntary); *Harrison v. City of Milwaukee*, 49 Wis. 247 (1880) (when payment is made under a belief, caused by fraudulent misrepresentations of the city officers, that plaintiff was charged with only half the cost, is not a voluntary payment).

Finally, Defendant's assertion that Plaintiffs "did not have a reasonable expectation of privacy" in the information in question ignores Plaintiff's allegations that the information at issue included "Plaintiffs' and Class Members' (1) status as medical patients; (2) health conditions; (3) desired medical treatment or therapies; (4) appointment requests; (5) desired locations or facilities where treatment was sought; and (6) phrases and search queries (such as searches for symptoms, treatment options, or types of providers) conducted via the general search bar." Amd. Compl. ¶

16. And Plaintiff alleged they "had a reasonable expectation of privacy" in this information. *Id.* ¶ 206. These allegations must be accepted as true for purposes of a motion to dismiss, and Plaintiffs clearly have a reasonable expectation of privacy in their medical information.

Thus Defendant has failed to meet its burden. Defendant is clearly on notice of this claim and can formulate a defense because it attempts to skirt Plaintiffs' allegations in order to bolster its defenses. Defendant's motion must be denied.

**b. Plaintiffs sufficiently alleged publication of private facts**

Plaintiff also states a claim for invasion of privacy, public disclosure of private facts. Under Wisconsin law, the elements of such a claim are:

(1) a public disclosure of facts regarding the plaintiff; (2) the facts disclosed are private facts; (3) the private matter made public is one which would be highly offensive to a reasonable person of ordinary sensibilities; and (4) the defendant acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter, or with actual knowledge that none existed. *Reetz*, 2022 WI App 59, ¶ 18 (quoting *Pachowitz v. LeDoux*, 2003 WI App 120, ¶18). Here, Defendant challenges the publicity element, whether the facts disclosed were private, and whether the disclosure would be highly offensive to a person of ordinary sensibilities. MTD p. 12-13.

The Court should reject Defendant's challenge to the "publicity" element. Under Wisconsin law, when private information is released to even one person with "loose lips," it is considered published for purposes of a "private facts" privacy claim. *Pachowitz*, 265 Wis. 2d 631, 650. Here, Plaintiffs allege their sensitive medical information was disclosed to Facebook, one of the world's largest tech companies and online advertisers, who specializes in using the information, and combining it with other personally identifiable data, to identify individuals and sell online advertising space to companies seeking to target specific individuals based on their

health conditions. *See, e.g.*, Am. Compl. ¶¶ 11, 16-17. That suffices. *See Pachowitz*, 265 Wis. 2d at 644 (in a case involving EMT and hospital confidentiality, finding publicity element met where defendant disclosed plaintiff's data to "but one person" and it was that person "who further publicized the information"). The Court should also reject Defendant's assertion that the information in question is not "private." MTD p. 12. As the Amended Complaint alleges, the information disclosed includes "Plaintiffs' and Class Members' (1) status as medical patients; (2) health conditions; (3) desired medical treatment or therapies; (4) appointment requests; (5) desired locations or facilities where treatment was sought; and (6) phrases and search queries (such as searches for symptoms, treatment options, or types of providers) conducted via the general search bar." ¶ 16, 101, 111. Defendant ignores those allegations, along with Wisconsin law establishing that a patient's medical information is confidential. *See Steinberg,* 194 Wis. 2d at 465.

Finally, a reasonable person of ordinary sensibilities would find disclosure of their medical information to third party advertising companies highly offensive. *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1127 (S.D. Cal. 2023). As the Court held in *Cousin*, a "general allegation that the defendant collected 'sensitive health and personal safety information' from plaintiffs was sufficient to plead a 'highly offensive' intrusion for a Rule 12(b)(6) motion." *Id* (citing *Katz-Lacabe v. Oracle Am., Inc.*, No. 22-cv-04792-RS, 2023 WL 2838118 at *7 (N.D. Cal. Apr. 6, 2023). As United States Court of Appeals for the Ninth Circuit has held, whether the use of a tracking pixel to track medical information "could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020). Here, as in those cases, the Court should deny the motion to dismiss.

Thus Defendant has failed to meet its burden. Defendant is clearly on notice of this claim and can formulate a defense because it attempts to skirt Plaintiffs' allegations in order to bolster its defenses. Defendant's motion must be denied.

**D. P Plaintiffs sufficiently alleged breach of implied contract**

Plaintiffs sufficiently alleged a contract implied in Defendant's conduct: Plaintiffs provided monetary compensation to Defendant in exchange for medical care. ¶¶221-31. As a condition of medical care, Defendant required its patients to provide their private, confidential, health information. *Id.* In return, Defendant provided its patients with promises or terms of the contract through its conduct, privacy policies, elsewhere—its implied, implicit, elevated duty as health care provider, and good faith duties—to keep that private, confidential, health information secure and confidential. *Id.* These are terms that were not only provided in the Privacy Policies but were also implied by conduct. When, in the course of conduct, health care providers require patients to provide confidential information, the implied promise is that health care providers will keep this *confidential* information *confidential*—in the same condition it received it. Defendant failed to do this, and thus breached its contractual obligations. These allegations are sufficient under Wisconsin law, as Defendant clearly is on notice of the claims against it and able to defend itself., and Defendant's arguments otherwise ignore Wisconsin law and Plaintiffs' allegations. Courts in Wisconsin have found similar claims have merit. *See*; *Mrozinski*, (Exhibit B).[7]

Defendant argues that Plaintiffs' claim fails because their allegations are vague and indefinite. But Defendant is clearly on notice of Plaintiffs' claims, as it can formulate a defense by attempting to skirt Plaintiffs' allegations. And Plaintiffs have clearly set forth the elements of their claims, including the terms of the contract, as set forth above.

---

[7] **Courts across the country have found the same. *See* Exhibit A-5 (listing orders denying similar motions to dismiss contract claims).**

Defendant makes another argument in an attempt to rid itself of this claim, that its obligations arise from HIPAA rather than an implied contract. Plaintiff appreciates Defendant's concession that it had duties under HIPAA. But those duties do not absolve Defendant of its actions when it breaches such duties. Nor does Defendant sufficiently support such an argument. Defendant cites one case suggesting that "the promise to perform a legal duty is not sufficient consideration." MTD p. 14. But Defendant did not simply promise to perform a legal duty. Plaintiffs' allegations here go beyond those; Plaintiffs here alleged an implied contract with clear terms. And Defendant affirmatively promised patients like Plaintiffs things like "we must obtain your specific written authorization for any other use or disclosure of your health information [which] **includes marketing activities conducted by third parties or where a third party seeks to purchase protected health information**"; which is not a mere statement of fact. ¶¶62-70 (emphasis added). "In contrast" to Defendant's cited case, "this case arises in the context of paid healthcare services and is based on an ongoing relationship between the parties that Plaintiffs alleges was based in part, or that the amount they paid for the services was based in part, on [defendant's] security promises." *C. M. v. MarinHealth Med. Grp.*, Inc., No. 23-CV-04179-WHO, 2024 WL 217841, at *4 (N.D. Cal. Jan. 19, 2024). "In this context, adequate consideration has been alleged for the implied contract claim." *Id; In re Cmty. health Data Incident Litigation*, No. 49D01-2211-PL-041242 at *8-12 (Ind. Comm. Ct., Marion Co. Super. Ct. Oct. 25, 2023) (attached hereto) (finding unavailing Defendant's argument that it had a "preexisting obligation" under HIPAA and thus that the contract was not supported by sufficient consideration).

Thus Defendant has failed to meet its burden. Defendant is clearly on notice of this claim and can formulate a defense because it attempts to skirt Plaintiffs' allegations in order to bolster its defenses. Defendant's motion must be denied.

### E. Plaintiffs sufficiently alleged unjust enrichment

Plaintiffs sufficiently alleged unjust enrichment when they alleged each element necessary for an unjust enrichment claim—they pleaded they conferred their PHI upon Defendant, who promised it would not disclose their PHI, that Defendant then disclosed their PHI, and that it would be inequitable for Defendant to retain the benefit of that disclosure because it obtained Plaintiffs' PHI under the premise of the promise of not disclosing it. ¶¶ 232-39. These allegations are sufficient under Wisconsin law to plausibly suggest that "by using the website, [Plaintiffs] conferred upon [Defendant] the benefit of their data, [Defendant] was aware of the benefit and in fact profited from it, and allowing [Defendant] to retain that benefit would be inequitable." *Mrozinski*, (Exhibit B), p. 14-15. Furthermore, these allegations are sufficient under Wisconsin law as Defendant clearly is on notice of the claims against it and able to defend itself. Defendant's arguments otherwise ignore Wisconsin law and Plaintiffs' allegations. Courts in Wisconsin have rejected Defendant's arguments and found similar claims have merit. *Mrozinski*, (Exhibit B); *Schaefer,* (Exhibit C).[8]

Defendant argues that Plaintiffs failed to sufficiently allege they conferred a monetary benefit on Defendant. MTD p. 15. As Plaintiffs alleged in their Complaint and as already explained above, Plaintiffs absolutely alleged they conferred a monetary benefit on Defendant—they alleged they paid Defendant for medical services, and the services they paid for were supposed to include reasonable privacy and data security protections for their Private Information, but due to Defendant's Disclosure, Plaintiffs did not receive the privacy and security protections for which

**[8] Courts across the country have found the same. *See* Exhibit A-6 (listing orders denying similar motions to dismiss unjust enrichment claims).**

they paid. ¶¶ 232-39. Plaintiffs allegations require nothing more, despite Defendant's argument that they failed to allege, for example, that Defendant charged fees for the use of its website.[9]

Finally, Defendant argues Plaintiffs cannot maintain both breach of implied contract and unjust enrichment claims. But this ignores that under federal law, Plaintiffs may properly maintain alternative claims at this stage of litigation. *See N. Grp., Inc. v. Tech 4 Kids Inc.*, 352 F. Supp. 3d 882, 888 (E.D. Wis. 2018) ("In this case, Northern Group asserted in its complaint a claim of unjust enrichment in the alternative to its claim for breach of contract. This was entirely proper."); *see also Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003) ("a party is allowed to plead breach of contract, or if the court finds no contract was formed, to plead for quasi-contractual relief in the alternative.").

Thus Defendant has failed to meet its burden. Defendant is clearly on notice of this claim and can formulate a defense because it attempts to skirt Plaintiffs' allegations in order to bolster its defenses. Defendant's motion must be denied.

### F. Plaintiffs sufficiently alleged breach of fiduciary duty

Defendant, a hospital, breached its fiduciary duty to Plaintiffs, its patient, by tracking and transferring Plaintiffs' information to third parties for advertising purposes without their consent. ¶¶240-49. These allegations are sufficient under Wisconsin law, and Defendant's arguments otherwise ignore Wisconsin law and Plaintiffs' allegations. *See McGeshick v. Choucair*, 9 F.3d

---

[9] **This claim is clearly distinguishable from the Court's finding in *Linman v. Marten Transp., Ltd.*, No. 22-CV-204-JDP, 2023 WL 2562712, at *6 (W.D. Wis. Mar. 17, 2023). Considering unjust enrichment in data breach context and finding plaintiff failed to state a claim because plaintiff failed to allege defendant "sold his data or that [defendant] received payment to store it. . . . A merchant may be unjustly enriched if a customer would have paid less for a service had he known that his data would not be secure." *Id.* This is exactly what Plaintiffs alleged here: defendant sold their data; they paid defendant for medical services and confidentiality, that is, storage (rather than sale) of their confidential information; and that they would have paid less for the medical services had they known their data would not be secure. ¶¶ 232-39.**

1229, 1234 (7th Cir. 1993) (doctors owe fiduciary duties to patients under Wisconsin law); *United States v. Snook*, 366 F.3d 439, 447 (7th Cir. 2004) ("recognizing the fiduciary nature of the "trust" relationships set forth as examples in the commentary—[including] doctor/patient relationships").

Defendant argues that Plaintiffs' claim fails because it is "not clear" how Plaintiffs' use of Defendant's website "is covered by any ethical obligations" or that any causal connection was established. MTD p. 15-16. Defendant apparently missed the point of Plaintiffs' allegations. In offering and encouraging patients to use its website and web-based tools, Defendant made affirmative promises to maintain the privacy and security of Plaintiffs' Private Information. *See* ¶¶62-70; 240-49. Indeed, Defendant promises its patients that it "will maintain the privacy of your personal health information (PHI). This Notice of Privacy Practice describes our legal duties and privacy practices concerning your personal health information." ¶65. Defendant also assures patients that it will only "release your health information, we release information only for treatment, payment, and health care operations." ¶66. According to its own privacy policy, Defendant admits that it "must obtain your specific written authorization for any other use or disclosure of your health information. This includes marketing activities conducted by third parties or where a third party seeks to purchase protected health information." ¶68.

Plaintiffs relied on these promises, believing that they were "communicating exclusively with their trusted healthcare provider" and "reasonably expected that [his] online communications with [Defendant] were confidential…and that, as such, those communications would not be transmitted to or intercepted by a third party." *Id.* ¶¶8, 99. By disclosing Plaintiffs' private data to third parties without their consent, Defendant breached its fiduciary duty to Plaintiffs and violated its own privacy policies. These allegations are sufficient under Wisconsin law. *Reget v. Paige*, 2001 WI App 73, ¶ 12 (explaining the elements for a claim of breach of fiduciary duty: (1) the

defendant had a fiduciary duty; (2) the defendant breached that duty; and (3) the breach of duty caused injury to the plaintiff.). Furthermore, Defendant clearly is on notice of the claims against it and able to defend itself.

Thus Defendant has failed to meet its burden. Defendant is clearly on notice of this claim and can formulate a defense because it attempts to skirt Plaintiffs' allegations in order to bolster its defenses. Defendant's motion must be denied.

### G. Plaintiffs sufficiently alleged misrepresentation

Defendant misrepresented that it would maintain Plaintiffs' PHI in confidence, and Plaintiffs "reasonably" relied on that misrepresentation to their detriment. "Reasonable reliance" is not a matter that lends itself to a motion to dismiss because it is, at bottom, a fact issue. Courts hold that whether reliance is "reasonable" is a "question of fact." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 767 (7th Cir. 2010). ("Whether reliance was reasonable is ordinarily a question of fact"). And as a fact question, the "reasonableness of one's reliance on a misrepresentation is judged after reviewing the facts of the case, including 'the intelligence and experience of the misled individual and the relationship between the parties.'" *Arrowhead Sys. v. Parker*, 2014 WI App 24, 352 Wis. 2d 755, 843 N.W.2d 711 (*quoting Bank of Sun Prairie v. Esser*, 155 Wis. 2d 724, 734, 456 N.W.2d 585 (1990). In fact, Wisconsin courts defer deciding the issue even if a contract between the parties "contains provisions contrary to the representations." *Pierre v. Logcrafters, L.L.C.*, 2000 WI App 161, 238 Wis. 2d 94, 617 N.W.2d 677. In other words, reliance questions are for the jury so long as Plaintiffs identifies the misrepresentation relied on.

Plaintiffs plead just that. As they allege, Defendant represented it would maintain patient privacy and data security under its Privacy Policy, listing the "specific uses and ways in which Private Information could be shared." ¶252. In so doing, Defendant promised it would release PHI "only for treatment, payment, and health care operations." ¶66. If Defendant wanted to disclose

patient PHI for any other reason, it affirmed it needed to "obtain [] specific authorization for any other use or disclosure of your [PHI]. This includes marketing activities conducted by third parties or where a third party seeks to purchase protected health information." ¶68. Put another way, Defendant represented it would not disclose Plaintiffs' PHI to third parties without their written authorization.

Plaintiffs plead they "believed the statements in Defendant's Privacy Policy to be true and relied on them to their detriment." ¶¶100, 110, and 254 (Plaintiffs explain they disclosed their PHI trusting Defendant would safeguard it under "privacy policies"). Their belief was "reasonable given Defendants' "representations in its Privacy Policy and the absence of any Website privacy policy relating to or disclosing CRH's employ of tracking technologies on the Website." ¶208.

These allegations suffice under Wisconsin law. Plaintiffs have identified how Defendant misrepresented its privacy practices and pled that they relied on that misrepresentation "to their detriment." That is all that is needed to establish a misrepresentation claim. Defendant counters these principles and allegations only by ignoring them and citing two out-of-state decisions considering New York and "California law." MTD p. 17. But Defendant fails to cite Wisconsin authority on point or describe how Plaintiffs fail to meet its standards. That Defendant *doubts* Plaintiffs viewed or relied on its policy is not enough, as the Court must defer any fact disputes on those questions to trial.

Defendant has failed to meet its burden. Defendant is clearly on notice of this claim and can formulate a defense because it attempts to skirt Plaintiffs' allegations in order to bolster its

defenses. As a result, the Court should find Plaintiffs have established their misrepresentation claim, including its "reasonable reliance" element.[10] Defendant's motion must be denied.

### H. Plaintiffs sufficiently alleged conversion

Defendant converted Plaintiffs' PHI when it tracked, captured, and bartered their PHI to Facebook and Google for profit. Defendant misstates the law when it says Wisconsin has confined conversion claims to only those involving "chattel," as though Defendant can only convert property that it can touch. Not so. Wisconsin law holds that defendants convert "intangible" property like money and software when they take it without consent. *Methodist Manor of Waukesha, Inc. v. Martin*, 2002 WI App 130 (Ct. App. 2002) ("the thing that the defendant diverts to their or their own use need not[...] be a chattel; money may also be converted."). Indeed, a conversion claim's elements apply to "property," not just "chattel." Those elements include: (i) "intentional control or taking of property belonging to another;" (ii) without that owner's consent; and (iii) resulting in "serious interference with the rights of" the owner. *H.A. Friend & Co. v. Professional Stationery, Inc.*, 294 Wis. 2d 754, 763 (Wis. App. 2006) (emphasis added). Wisconsin courts apply these elements to property like Plaintiffs' PHI.

For example, the Wisconsin Supreme Court upheld a jury verdict awarding damages for converted data in *Mgmt. Comput. Servs.* 206 Wis. 2d 158, 189. There, a jury found that defendant had "intentionally converted [plaintiff]'s software contained on backup tapes without [plaintiff]'s consent, that [defendant]'s actions seriously interfered with [plaintiff]'s right to possess and use that property, and that [plaintiff]'s conversion damages in this regard were $65,000." *Mgmt.*

[10] Defendant refers only to "negligent" misrepresentation in its motion while Plaintiffs plead "intentional" misrepresentation. Either way, "intentional" and negligent misrepresentation claims share the "reasonable reliance" element, meaning the Court's analysis is the same. *Lambrecht v. Don Belman Homes, Inc.*, 2007 WI App 110, 300 Wis. 2d 580, 730 N.W.2d 461 ("All misrepresentation claims share the following required elements[...] the Plaintiffs must have believed and relied on the misrepresentation to his detriment or damage").

*Comput. Servs.*, 196 Wis. 2d 578, 591-92 (Ct. App. 1995) (overruled on other grounds). After defendant challenged the jury's award on appeal, the Wisconsin Supreme Court affirmed it, holding that "an owner of converted property generally may recover its value at the time of the wrongful taking[,]" acknowledging that the data was property. *Mgmt. Comput. Servs.*, 206 Wis. 2d 158, 188. In fact, the award compensated Plaintiffs for the software converted from its data tapes, not for the tapes themselves. *Id*. This is because the "tangible" tapes are of no value, while the software is worth $65,000. As a result, electronic information counts as property that defendants can convert under Wisconsin law.

That same reasoning applies here. Defendant converted Plaintiffs' PHI without their consent, resulting in a "serious interference of" their rights. That interference continues to this day, as Plaintiffs do not possess it and Defendant has otherwise transferred it to third parties. In response, Defendant cites federal decisions that do not control the issue, as they do not cite *Mgmt. Comput. Servs.* or account for its holding that digital information can constitute property. Because state law controls Plaintiffs' state-law claims, the Court should defer to *Mgmt. Comput. Servs.* and apply its reasoning. *Five Star Airport All., Inc. v. Milwaukee Cty.*, 939 F. Supp. 2d 936, 939 (E.D. Wis. 2013) (district courts should defer to a state's "highest court" and "intermediate courts" when deciding state law issues).

Thus Defendant has failed to meet its burden. Defendant is clearly on notice of this claim and can formulate a defense because it attempts to skirt Plaintiffs' allegations in order to bolster its defenses. Defendant's motion must be denied.

### I. Plaintiffs sufficiently alleged violation of Wisconsin consumer protection

Defendant violated § 100.18 when it represented it would not disclose PHI to third parties without consent, as that representation was "untrue, deceptive, [and] misleading[.]" Wis. Stat. § 100.18. Unlike a common law misrepresentation claim, § 100.18 does not require Plaintiffs to

plead or prove "reasonable reliance," nor must they plead defendant intended to harm them. *K&S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 2007 WI 70, ¶36 (listing the elements to state a claim, clarifying "[a] Plaintiffs does not have the burden of proving reasonable reliance"). Instead, Plaintiffs need only plead three elements. First, that defendant "made a representation" to the public intending to "induce an obligation. *Id.* at ¶ 19. Second, that the representation was "untrue, deceptive or misleading." *Id.* And third, that the misrepresentation caused pecuniary loss. *Id.*

Defendant challenges Plaintiffs' § 100.18 on three grounds and they all fail for the same reason—they claim Plaintiffs have not alleged facts that they, in fact, alleged. First, Defendant says Plaintiffs never specify what "statements in Crossing Rivers' privacy policy… were untrue." MTD p. 18. Not so. As above, Plaintiffs allege Defendant promised it would not disclose their PHI to third parties without their consent and that "[d]espite the representations in its Privacy Policy, Defendant did, in fact, disclose Private Information to unauthorized third parties and for impermissible purposes." Am. Compl. ¶ 70. Indeed, Plaintiffs itemize every misstatement in ¶ 267, specifying what Defendant misrepresented and how it constitutes a misrepresentation. Second, Defendant says Plaintiffs never detail what "transaction" is at issue between the parties, speculating it could include accessing Defendant's site, paying for services, or "something else." Def.'s Mot. 19. But this again neglects the pleadings, as Plaintiffs pleaded they disclosed their PHI "[a]s a condition of receiving medical care from Defendant" and that they "provided payment" for that care. Am. Compl. ¶¶ 222, 268. No other "transaction" is at issue. And third, because Plaintiffs paid relying in part on Defendants' misrepresentations, Defendant deprived them the "benefit of the bargain," imposing a pecuniary loss to be proved at trial. Am. Compl. ¶ 255 ("Plaintiffs and the Class Members have suffered additional pecuniary loss and injury-in-fact, including, without limitation, lost benefit of their bargain and lost value of their Private Information").

As a result, the Court should find Plaintiffs have established their § 100.18 claim. Thus Defendant has failed to meet its burden. Defendant is clearly on notice of this claim and can formulate a defense because it attempts to skirt Plaintiffs' allegations in order to bolster its defenses. Defendant's motion must be denied.

### J. Plaintiffs sufficiently alleged violation of Wisconsin wiretap

Plaintiffs alleged Defendant intentionally employed third-party source code to intercept and disclose their Protected Information to third parties without their consent—a tortious violation of Wisconsin's Wiretap Act; ¶¶ 273-89. These claims are sufficient under Wisconsin law, and Defendant's arguments otherwise ignore Wisconsin law and Plaintiffs' allegations.

Under Wisconsin's wiretapping statute, absent a statutory exception, it is unlawful for any person to "[i]ntentionally intercept[], attempt[] to intercept or procure[] any other person to intercept or attempt to intercept, any wire, electronic or oral communication." Wis. Stat. § 968.31(1)(a). The statute further provides that "[a]ny person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of [the statute] shall have a civil cause of action against any person who intercepts, discloses or uses, or procures any other person to intercept, disclose, or use, the communication." Wis. Stat. § 968.31(2m). Defendant does not dispute that it intercepted Plaintiffs' communications within the meaning of Wisconsin's wiretapping statute, Wis. Stat. § 968.31. Def. Memo. at 17-18. Nor could it; the statute defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device." Wis. Stat. § 968.27(9).

Instead, Defendant relies on the assertion that "Wisconsin is a 'one-party' consent state." However, that assertion does not defeat Plaintiffs' claim because the statute prohibits the interception of communications, even where one party consents, if "the communication is

intercepted for the purpose of committing any criminal or tortious act in violation of the constitution or laws of the United States or of any state or for the purpose of committing any other injurious act." Wis. Stat. § 968.31(2)(c).

Wisconsin courts emphasize that "[t]he interception of oral communications where one party gives consent is unlawful if it was intercepted for the purpose of committing any criminal or tortious act or for the purpose of committing any other injurious act." *Bach v. Kopatich*, 2012 WI App 11, 338 Wis. 2d 486, 808 N.W.2d 742; *J.H. Desnick v. Am. Broad. Cos.*, 44 F.3d 1345, 1353 (7th Cir. 1995) ("federal and [Wisconsin] wiretapping statutes that the plaintiffs invoke allow one party to a conversation to record the conversation unless their purpose in doing so is to commit a crime or a tort or (in the case of the [Wisconsin], but not the federal, law) to do 'other injurious acts.'"). Plaintiff's Complaint does just that. As alleged in the Complaint, Defendant's interception of Plaintiffs' communications was "for the purpose of committing a criminal or tortious act" or another "injurious act." Am. Compl. ¶¶ 280-281. . Plaintiffs allege that Defendant intentionally, without Plaintiffs' consent, utilized software to access, intercept and disclose Plaintiff's electronic communications. ¶¶21, 26, 47-61, 70-96, 89, 112, 209, 273-89. They allege Defendant intercepted their communications for the purpose of multiple tortious acts. *Id.* ¶¶273-89. Specifically, Defendant intercepted Plaintiff's communications for the purpose of sharing those intercepted communications with Facebook, Google, and other third parties. In doing so, Defendant invaded Plaintiffs' reasonable expectation of privacy, frauded Plaintiffs, breached its fiduciary duty to Plaintiffs, and unjustly enriched itself at their expense. ¶¶192, 203, 205-20, 240-49, 253, 269, 273-89.

Defendant also surreptitiously intercepted Plaintiffs' communications for the purpose of disclosing those communications without their permission in violation of HIPPA standards. *Id.*

¶¶125-33, 280. Defendant's conduct in intercepting Plaintiff's communications for the purpose of sharing them with advertising companies like Facebook and Google violates multiple criminal laws. For example, the unauthorized disclosure of patient status violates HIPAA. *See In re Meta Pixel Healthcare Litig*., 2022 WL 17869218, at *9 (N.D. Cal. Dec. 22, 2022) ("[T]he Pixel captures information that connects a particular user to a particular healthcare provider—i.e., patient status—which falls within the ambit of information protected under HIPAA."). Likewise, under 42 U.S.C. § 1320d-6, it is a criminal violation for a person to "use[] or cause[] to be used a unique health identifier" or to "disclose[] individually identifiable health information to another person…without authorization" from the patient. The penalty for that criminal violation is enhanced where "the offense is committed with intent to sell, transfer, or use individually identifiable health information for commercial advantage, personal gain, or malicious harm." 42 U.S.C. § 1320d-6. Such a criminal scheme—i.e., bartering Plaintiffs' Private Information in return for advertising benefits—is precisely what is alleged in Plaintiffs' complaint. ¶¶19, 36-37, 43, 88, 151, 154-57, 280. Accordingly, Defendant's criminal conduct in intercepting Plaintiffs' health information and personal identifiers for the purpose of disclosing them to Facebook and Google also prohibits Defendant from invoking the one-party consent exception.

Thus, because the complaint alleges that Defendant intercepted Plaintiffs' electronic communications "for the purpose of committing a criminal or tortious act," Plaintiffs have adequately alleged a cause of action under the statute. Defendant has therefore failed to meet its burden. Defendant is clearly on notice of this claim and can formulate a defense because it attempts to skirt Plaintiffs' allegations in order to bolster its defenses. Defendant's motion must be denied.

### K. Plaintiffs sufficiently alleged violation of Wisconsin health care confidentiality records act

Under Wisconsin law, health care providers must maintain patient health care records in confidence. Wis. Stat. § 146.81, *et seq*. Defendant does not contest that it is a health care provider (it is), that it collects health records (it does), or that Plaintiffs are its patients (they are). Instead, Defendant argues only that Plaintiffs have not "set forth specific facts suggesting that any information disclosed to third parties amounted to protected [PHI]." Def.'s Mot. 20. In other words, Defendant denies that the data Plaintiffs enter on its site is a "health care record."

But Wisconsin law defines health care record to encompass "all records related to the health of a patient" that are created "by or under the supervision of a health care provider." Wis. Stat. § 146.81. "Provider" includes hospitals like Defendant and records including information created in all forms, "including those on which written, drawn, printed, spoken, visual, electromagnetic or digital information is recorded or preserved, regardless of physical form or characteristics." Wis. Stat. § 146.836. Indeed, when interpreting the statute, the Wisconsin Supreme Court has they held that "records" encompass electronic records like Plaintiffs': "'all records' means 'all records'[…] including electronic records[.]" *Banuelos v. Univ. of Wis. Hosps. & Clinics Auth.*, 2023 WI 68, ¶32.

Throughout their complaint, Plaintiffs plead they disclosed health data to Defendant on its website, identifying who they were, their patient status, their conditions, the treatments they wanted, and who they wanted to treat with. Am. Compl. ¶ 101. That includes searching Defendant's site for "doctors specializing in primary care and obstetrics/gynecology" and "emergency medicine, cardiology, anesthesiology, primary care, and podiatry[.]" *Id.* ¶¶ 98, 107. This was "digital information" "related to the health of" Plaintiffs under Wis. Stat. § 146.81. That this information did not take paper form or as a file within a computer folder does not defeat the point—"all records means all records." *Banuelos*, 2023 WI 68, ¶32.

Thus Defendant has failed to meet its burden. Defendant is clearly on notice of this claim and can formulate a defense because it attempts to skirt Plaintiffs' allegations in order to bolster its defenses. Defendant's motion must be denied.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss.

Dated: May 28, 2024

Respectfully submitted,

*/s/Alex Phillips*
Alex Phillips, SBN 1098356
Samuel J. Strauss, SBN 1113942
Raina Borelli (*Pro Hac Vice* forthcoming)
STRAUSS BORRELLI PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
(872) 263-1109 (facsimile)
aphillips@straussborrelli.com
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops (*Pro Hac Vice* forthcoming)
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenandmalad.com

J. Gerard Stranch, IV (*Pro Hac Vice* forthcoming)
Andrew E. Mize (*Pro Hac Vice* forthcoming)
STRANCH, JENNINGS & GARVEY, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
(615) 255-5419 (facsimile)
gstranch@stranchlaw.com
amize@stranchlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

I certify that a copy of this document was filed electronically on May 28, 2024 with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

*/s/Alex Phillips*
Alex Philips